[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 148.]

THE STATE EX REL. BOWLING, APPELLANT, *v*. NATIONAL CAN CORPORATION;
INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State ex rel. Bowling v. Natl. Can Corp., 1996-Ohio-200.]

*Workers' compensation—Application for permanent total disability compensation—Industrial Commission's denial of application not an abuse of discretion, when.*

(No. 94-2360— Submitted October 8, 1996—Decided December 11, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD10-1463.

————————

{¶ 1} In 1970, appellant-claimant, Earl Bowling, was injured while in the course of and arising from his employment with National Can Corporation. In 1973, he was injured again while working for the same employer. His workers' compensation claims were allowed for (1) acute low back strain and (2) fracture, radial head, right elbow. Treatment was minimal for both conditions and, after a brief absence from work, claimant returned to his former job. He continued in that position until the plant closed in 1974. For reasons unknown, claimant never worked again. In 1980, claimant's second claim was additionally allowed for "post traumatic stress disorder, chronic."

{¶ 2} In 1989, claimant moved appellee Industrial Commission of Ohio for permanent total disability compensation. Claimant submitted the report of Dr. Edward Kezur, his treating psychiatrist. Dr. Kezur's report, in its entirety, read:

"Mr. Bowling had two separate injuries. The first one occurred on September 22, 1970, when he injured his back lifting heavy weights when employed by the National Can Company. He was allowed a claim (#70-22795) for acute low back strain. In 1973, also at National Can he fractured his right elbow

(claim number 73-35367) on December 17, 1973. He was allowed for a right elbow fracture at the bend of the radius and a post traumatic neurosis.

"I have been seeing Mr. Bowling since July 6, 1984, approximately every two weeks. He is constantly anxiety-ridden and depressed. He is very irritable and argues much with his wife. His energy level is diminished as is his sexual libido. He is very insominc [*sic*]. He has constant pain in his lower back and visits a chiropractor periodically.

"Mr. Bowling receives the following medicines * * *. His response to this treatment is marginal. I view him as permanently and totally disabled as the result of his combined physical and emotional disorder, namely post-traumatic stress disorder with anxiety and depression and chronic pain disorder."

{¶ 3} Claimant's treating chiropractor, E. C. Mollohan, also reported:

"Diagnosis: Chronic lumbar-Lumbosacral sprain. Sciatic neuritis (left). Degenerative arthrosis.

"Prognosis: Gaurded [*sic*], poor based on case history and clinical findings. I predict Mr. Bowling's condition will continue to regress.

"Comment: From information collected regarding Mr. Bowling, he also has a severely injured right elbow and suffers from a post traumatic neurosis and depression syndrome. When last seen 11-12-84, in my opinion, Mr. Bowling was permanently and totally desabled [*sic*] from any kind of employment."

{¶ 4} Neither sciatic neuritis nor degenerative arthrosis are allowed conditions in these claims.

{¶ 5} The commission obtained reports from several other physicians as well. Dr. D. D. Kackley found nothing wrong with claimant's right elbow. Dr. Kackley's examination of the claimant's back was unremarkable:

"He [claimant] presents with a fairly normal lumbar curve. There is mild tightness of the lumbar paravertebral muscle groups and he alleges some rather generalized tenderness. He forward flexes the back through a range of about fifty

or sixty (50 or 60) degrees and arises [*sic*] slowly. Lateral bending and extension is also tolerated through a fairly satisfactory range compatible with the age group. Leg length is equal. The calf muscle groups measure equal in circumference. The patellar reflexes are present and somewhat hypoactive but obtainable. Both [A]chilles reflexes are also depressed but equal. I cannot demonstrate specific plantar flexor or extensor weakness. Hip flexion and rotation is satisfactory and straight leg raising is carried seventy (70) degrees bilaterally without obvious discomfort. Pinpoint sensation is somewhat diminished over the distribution of the first lumbar nerve root on both the right and left side. No definite plantar flexor or extensor weakness is demonstrated and a satisfactory dorsal pulse is present."

{¶ 6} Dr. Kackley concluded:

"A review of the two files confirms the fact that this individual has been under treatment for a long period of time. He was carried on temporary total impairment through a maximum amount and has had no recent compensation. He evidently is still being seen for some psychiatric management on a regular basis at times.

"He is seen today for his ability to engage in any sustained remunerative employment activity. On the basis of orthopedic examination he would be capable of various types of sustained remunerative employment activity if made available to him and he was so motivated. His degree of actual orthopedic impairment is of a relatively low amount. I could not demonstrate any positive findings relative to the right elbow. Giving him the benefit of some loss of low back reserve and function would account for approximately ten (10%) percent permanent partial orthopedic impairment.

"I would question the ability of this individual to participate in rehabilitation services, not because of his orthopedic complaints, because of his [nonallowed] cardiopulmonary symptoms. However, orthopedically he would be capable of sedentary and light type of activity. I see no indication for any specific additional

diagnostic workup in that regard. Vocational evaluation or some type of occupational therapy might be given some consideration. On that basis I feel that he could tolerate sedentary and light type of work activity. Any inability to do so would have to be attributable to nonorthopedic factors."

{¶ 7} Dr. Michael T. Farrell felt that claimant's psychological condition was not work-prohibitive. He felt that claimant's condition would not preclude rehabilitation, although claimant's age, education, and work history would diminish his chances for success.

{¶ 8} Dr. Paul H. Dillahunt assessed a forty percent combined-effects impairment. He felt that claimant could do light work. Dillahunt's report was reviewed, in turn, by vocational consultant Anthony C. Riccio, Ph.D. Dr. Riccio concluded:

"It is significant from a vocational perspective that Dr. Dillahunt posited the following mental impairments:

"1. tenseness, nervousness, and anxiety;

"2. compromised ability to carry out detailed instructions or maintain attention and concentration for extended periods;

"3. compromised ability to remember locations and work[-]like procedures;

"4. compromised ability to work in coordination with or proximity to others without being distracted by them.

"There is no such thing as a low stress occupation. Stress is a function of worker perception. It is not a job characteristic. It is my opinion that anyone characterized as Dr. Dillahunt has characterized Mr. Bowling in terms of mental status would be unable to perform any light work or any other work at any level of exertion or at any skill level. The situation is further compounded by the facts that Mr. Bowling is of retirement age, has a marginal education, and has not worked in fifteen years. Old men with the mental and physical impairments found by Dr. Dillahunt in this case are simply irrelevant to the work force. When one adds the

4

marginal education and fifteen years of inactivity to the equation, one must conclude that this man is permanently and totally disabled. I do not believe he could secure or perform any unskilled light job existing in the state, regional, or national economy."

{¶ 9} In 1990, the commission denied permanent total disability compensation, writing:

"The reports of Doctors Kezur, Mollohan, Riccio, Farrell, Kackley and Dillahunt were reviewed and evaluated.

"This order is based particularly upon the reports of Doctors Farrell, Kackley and Dillahunt, consideration of the claimant's age, education, work history and other disability factors including physical, psychological and sociological, that are contained within the Statement of Facts prepared for the hearing on the instant Application, the evidence in the file and the evidence adduced at the hearing."

{¶ 10} The Court of Appeals for Franklin County later found that the order did not satisfy *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St. 3d 203, 567 N.E.2d 245, and returned the cause for further consideration and amended order. The commission's second order read:

"This order is based particularly upon the reports of Doctor(s) Kackley and Dillahunt, a consideration of the claimant's age, education * * *.

"The objective findings contained within the report of Dr. Kackley reflect the claimant is capable of sedentary and light types of job duties. Claimant's relatively varied vocational hisotry [*sic*] reflects he retains the transferable skills to engage in sedentary job duties. Claimant's low level of education (5th grade) and his advanced age (64) are impediments, but not complete barriers, to his returning to job duties. The weight of the evidence reflects claimant is not PTD as a result of the allowed conditions."

{¶ 11} Again, the order was found to be *Noll*-deficient, and was returned to the commission. This prompted a third order:

"The reports of Doctor(s) Kezur, Mollahan [*sic*], Farrell, Kackley, Dillahunt and Riccio, Vocational Expert[,] were reviewed and evaluated. The order is based particularly upon the reports of Doctor(s) Kackley and Farrell, evidence in the file and/or evidence adduced at the hearing.

"The claimant is 66, has a fifth grade education and has worked as a floorman[,] trucker and machine operator (per Dr. Farrell). Dr. Kackley did an independent specialist examination. He has provided a detailed narrative report. His report as to the claimant's physical impairment is found persuasive. He notes no positive findings with the right elbow and only some loss of lumbar reserve. He concludes that claimant is physically capable of light and sedentary work activity. An independent psychiatric examination was performed by Dr. Farrell. His report is much more detailed then [*sic*] that of Dr. Kezur and it is thus found persuasive. Dr. Farrell notes that while the claimant continues to have some psychiatric symptoms, they are not of a work prohibitive nature. Therefore, based on all the allowed conditions [it] is found the claimant is capable of light and sedentary work. According to the history the claimant gave Dr. Farrell, he was able to work with his allowed physical injuries until the plant closed down in 1974. Further in 1974, the claimant would have been only 47 years old. He has now had 19 years in which to improve his educational skills and retrain for light or sedentary work. There is no evidence of any attempts to do so. Nor is there any evidence on file that he lacked the ability to further educate himself or retrain. The claimant, not the Commission, has the burden of proof. *Goodyear Synthetic Rubber Corp. v. Dept. of Indus. Relations* [(C.P. 1954), 76 Ohio Law Abs. 146], 122 N.E.2d 503 *& White Motor Corp. v. Moore*, 48 Ohio St.2d 156 [2 O.O. 3d 338, 357 N.E.2d 1069] (1976). Considering the lack of vocational evidence showing the claimant was unable to further educate and retrain after he last worked, it is found the claimant has not met his burden of proving such was not possible. Therefore, his current limited education and older age are not found to be factors supporting disability. Further,

there is no vocational evidence showing his prior job experience as a machine operator does not have transferable skills to light or sedentary types of work. Mr. Riccio's report only refers to claimant's job as a trucker. Therefore the claimant has failed to meet his burden of proving he has no skills transferable to light [or] sedentary work. Further, his jobs indicate the ability to follow instructions and to be trained on different jobs. Further they indicate some manual dexterity as a machine operator in feeding stock into the machine. All these are skills which could be transferable to lighter work. Finally, they indicate an ability to drive a truck. Pursuant to the Ohio Occupational almanac, page 48, there were 37,590 light truck driver jobs in Ohio in 1988. The claimant thus has the skills to do these jobs now and they are within his mental and physical capacity. Based on all these factors it is found the claimant has not met his burden of proving he is permanently and totally disabled and it is found he is not so disabled. The report of Dr. Riccio is not found persuasive as it does not consider the claimant's previous work experience as a machine operator and it basis [*sic*] its opinion on the report of Dr. Dillahunt, a report which is not a basis of the denial of permanent total disability. The report of Dr. Mollahan [*sic*] includes the nonallowed conditions of sciatic neuritis and degenerative arthrosis and therefore, pursuant to [*State ex rel*.] *LTV Steel Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 22 [599 N.E.2d 265], it is not some evidence in support of permanent total disability due to the allowed conditions."

{¶ 12} Claimant commenced a third action in mandamus, alleging that the commission abused its discretion in denying permanent total disability compensation. The court of appeals disagreed and denied the writ.

{¶ 13} This cause is now before this court upon an appeal as of right.

*Gibson & Robbins-Penniman* and *Gus Robbins-Penniman*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee.

---

*Per Curiam*.

{¶ 14} Claimant seeks to compel an award of permanent total disability compensation pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666. The commission seeks to uphold its order as is. For the reasons to follow, we find in the commission's favor.

{¶ 15} Medically, Dr. Kackley anchors the commission's conclusion that claimant is physically capable of sustained remunerative employment. Equally important, the only evidence that claimant's psychological condition was work-prohibitive was properly rejected by the commission. Thus, there was "some evidence" suporting the commission's determination that claimant has a medical capacity for sedentary to light work.

{¶ 16} We note with interest that claimant's allowed conditions did not remove him from sustained remunerative employment. Claimant was working until the plant closed in 1974. Claimant never worked again, despite the lack of any medical prohibition. Claimant's paucity of treatment suggests that his medical condition has changed little, if any, since that time. This, in turn, implies that the allowed conditions were not work-prohibitive then, nor are they now.

{¶ 17} In the nonmedical analysis that followed, the commission discounted Dr. Riccio's vocational report after finding that his review of claimant's work history was incomplete. This determination was within the commission's prerogative and not an abuse of discretion.

{¶ 18} The commission's independent review of claimant's nonmedical factors determined that claimant's age, education and work history, while not entirely favorable, were not insurmountable barriers to re-employment. The commission stressed the claimant's failure to make any effort to enhance his re-employment prospects.

{¶ 19} The commission—as do we—demands a certain accountability of this claimant, who, despite the time and medical ability to do so, never tried to further his education or to learn new skills. There was certainly ample opportunity. At least fifteen years passed between the plant closure and claimant's application for permanent total disability compensation, and claimant was only age forty-seven when the plant shut down. Under these circumstances, we do not find that the commission's decision constituted an abuse of discretion.

{¶ 20} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

_____