DECISION
{¶ 1} Relator, Viola Guthrie, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders granting relief to respondent, Elder Beerman Stores Corporation ("Elder Beerman"), pursuant to R.C. 4123.522
for a failure of notice to Elder Beerman and denying relator's application for permanent total disability ("PTD") compensation. Relator also asked this court to order the commission to find that she is entitled to PTD compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant a writ, albeit on alternative grounds. (Attached as Appendix A.) Both relator and Elder Beerman filed objections to the magistrate's decision.
 {¶ 3} The magistrate made extensive findings of fact, and no party objected to those findings. Therefore, we adopt them as our own, correcting only the reference in Findings of Fact No. 3 to a surgery occurring in "2005." The referenced surgery occurred in 1985. This change has no effect on the substance of the magistrate's decision.
 {¶ 4} Having adopted the magistrate's findings of fact, we will not repeat the complicated procedural history of this matter. In brief, relator was injured on October 29, 1976, and May 6, 1977, while working for Elder Beerman. The commission awarded her PTD compensation following a hearing on February 16, 1993, retroactive to March 18, 1987, the date she first applied for PTD compensation for these injuries. However, Elder Beerman did not receive notice of the February 16, 1993 hearing and alleges that it did not become aware of relator's PTD claim and/or award until July 2000, when the Ohio Bureau of Workers' Compensation issued an invoice to Elder Beerman for $75,000. The commission subsequently agreed to hear Elder Beerman's appeal of the PTD compensation award and, following hearings by both a staff hearing officer and the full commission, denied relator's application for PTD compensation.
 {¶ 5} Relator filed this action for a writ of mandamus ordering the commission to vacate its recent orders and ordering the commission to award PTD compensation to relator. The magistrate rejected all five of relator's asserted grounds for issuing the writ. However, the magistrate granted the writ based on her finding that the commission had improperly relied on relator's failure to take advantage of rehabilitation opportunities since her injuries and found, instead, that the commission should have considered relator's failure to engage in rehabilitation only from the date of her application in 1987 and the date of the commission's compensation award in 1993.
 {¶ 6} Relator filed an objection to the magistrate's decision. She noted that she agrees with the magistrate's decision to grant the writ based on the commission's incorrect assessment of relator's failure to engage in rehabilitation. However, she objected to other portions of the magistrate's decision and essentially reargued four of the same five points presented to, and fully considered by, the magistrate: (1) the doctrine of laches should have applied to prevent Elder Beerman from obtaining review of the 1993 compensation award; (2) Elder Beerman should not have been permitted to present medical evidence; (3) relator should have been permitted to take Dr. Little's deposition; and (4) the commission should have granted reconsideration of the staff hearing officer's compensation award. We agree with the magistrate's careful analysis of these issues, and we adopt her conclusions of law on these issues as our own. We note that relator did not specifically object to the magistrate's finding that the commission was correct in determining that relator's claim had not been additionally allowed for any conditions relative to the 1985 neck surgery. Based on our own review of the evidence, we also adopt the magistrate's conclusions of law in that regard. Thus, we overrule relator's objection.
 {¶ 7} The commission filed no objections to the magistrate's decision. In its filing, it stated that the commission agreed with the magistrate's decision that the commission's consideration of the rehabilitation issue was an abuse of discretion.
 {¶ 8} Elder Beerman filed an objection to the magistrate's decision that the commission's consideration of relator's failure to seek rehabilitation since her injuries was an abuse of discretion. In Elder Beerman's view, the commission did not abuse its discretion in this respect, and we agree.
 {¶ 9} As Elder Beerman notes, the commission's 1993 award was based only on relator's allowed claims for the 1976 and 1977 injuries. Relator's 1987 application did not include, nor did the commission's 1993 award include, relator's 1985 surgery and related conditions, for which she apparently received temporary total compensation. Thus, the commission did not err by considering relator's failure to take advantage of rehabilitation opportunities since her 1976 and 1977 injuries and by not considering conditions unrelated to those injuries. In fact, the commission would have abused its discretion by considering those unrelated injuries. See State ex rel. Waddle v. Indus. Comm.
(1993), 67 Ohio St.3d 452, 454 ("a claimant cannot be compensated for disability caused by conditions unrelated to the industrial injury").
 {¶ 10} The record in this case firmly supports the commission's finding that relator failed to seek rehabilitation at any time following her 1976 and 1977 injuries. It is well-established that a claimant's failure to seek rehabilitation precludes PTD compensation. See State ex rel. Wilson v. Indus.Comm. (1997), 80 Ohio St.3d 250, 253 (PTD is "compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed"); State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148, 153 ("[t]he commission — as do we — demands a certain accountability of this [PTD] claimant, who, despite the time and medical ability to do so, never tried to further his education or to learn new skills"). Therefore, the commission did not abuse its discretion when it denied relator's application for PTD compensation. On these grounds, we sustain Elder Beerman's objection.
 {¶ 11} In conclusion, based on our own review of the evidence and the legal issues presented, we overrule relator's objection to the magistrate's decision, and we sustain Elder Beerman's objection to the magistrate's decision. Having sustained Elder Beerman's objection, the requested writ is denied.
Relator's objection overruled, respondent-employer's objectionsustained, writ of mandamus denied.
Petree and Sadler, JJ., concur.
 APPENDIXA IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Viola Guthrie, : :
Relator, : :
v. : No. 05AP-617 :
The Elder Beerman Stores Corporation : (REGULAR CALENDAR) and Industrial Commission of Ohio, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on November 22, 2005 Michael J. Muldoon, for relator.
Dunlevey, Mahan Furry, and William H. Barney, III, for respondent The Elder Beerman Stores Corporation.
Jim Petro, Attorney General, and Kelley R. Haddox, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 12} Relator, Viola Guthrie, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders which granted relief to respondent Elder Beerman Stores Corporation ("Elder Beerman") pursuant to R.C. 4123.522
and then later, by order dated January 21, 2005, denying relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to PTD compensation.
Findings of Fact:
 {¶ 13} 1. Relator has sustained two work-related injuries during the course of her employment with Elder Beerman. The first injury occurred on October 29, 1976, and is allowed as follows: "Claim Number 76-32730: Muscle strain cervical and lumbar spine, right scapular muscular, stretch injury to ulnar nerve, and stretch injury to median nerve in the area of C6," and "cervicalgia." The second injury occurred on May 6, 1977, and is allowed as follows: "Claim Number 77-50422: Right elbow, hip and right shoulder."
 {¶ 14} 2. Relator last worked on November 1, 1979 (pursuant to her PTD application).
 {¶ 15} 3. Relator had a cervical fusion at C6-7 performed August 13, [1985], and was paid temporary total disability ("TTD") compensation until July 15, 1987, at which time TTD compensation was terminated based upon a finding of permanence.
 {¶ 16} 4. On March 18, 1987, relator filed an application for PTD compensation. At the time, she was 52 years of age, indicated that she had a ninth grade education, and identified her past work history as a cook and waitress.
 {¶ 17} 5. In support of her application, relator attached the March 11, 1987 report of her treating physician, Dewey O. Mays, Jr., M.D. In that report, Dr. Mays identified relator's allowed conditions as follows: "muscle strain, cervical and lumbar spine, [right] scapular muscle, stretch injury to ulnar nerve, and stretch injury to median merve [sic] in C6 area." Dr. Mays opined as follows:
After taking into consideration all of her residuals, as well as her diagnoses, I feel she would be removed from renumer-ative [sic] gainful employment based on her age, education and vocational background and is, therefore, permanently and totally disabled.
 {¶ 18} 6. The record also contains the September 13, 1988 report of Clarence J. Louis, M.D. In his report, Dr. Louis identified the following conditions:
1) Cervical strain.
2) Cervical disc herniation.
3) Cervical radiculopathy, right, secondary to #2.
4) Status post cervical discectomy with fusion.
5) Biceps tendonitis.
6) Ulnar neuropathy at the elbow.
7) Bilateral rhomboiditis (rhomboid musculoligamental strain).
8) Lumbar strain.
9) Status post lumbar surgery (discectomy by history).
10) Lumbar radiculopathy, right side, by history, negative exam.
 {¶ 19} Dr. Louis noted that relator's neck and back pain would be further aggravated by bending, stooping, lifting, prolonged sitting and carrying objects greater than ten pounds. Dr. Louis further estimated that relator had a 45 percent whole body impairment but that her industrial injury did not prohibit her from engaging in sustained remunerative employment provided that it complied with the above-noted restrictions.
 {¶ 20} 7. The record also contains the August 7, 1991 report of Calvin J. Johnson, M.D. In his report, Dr. Johnson identified the following diagnoses:
DIAGNOSES:
1. Status post cervical diskectomy and a fusion.
2. Chronic cervical strain.
3. Painful degenerative disk disease; status post lumbar diskectomy with residual chronic pain syndrome.
4. Chronic rotator cuff tendonitis, right shoulder.
 {¶ 21} Thereafter, Dr. Johnson concluded that relator could not return to her former work as a cook or waitress, but that she could perform sedentary or semi-sedentary work provided there be no repetitive bending, stooping, squatting, no heavy or bulky lifting, and no strenuous pushing or pulling. Dr. Johnson indicated that relator should not work with her arms above her shoulder or chest level, that she needs to hold her neck in a neutral position and avoid repeated turning, and that she should not operate heavy equipment or be in an environment where there is a marked temperature change, cold or dampness.
 {¶ 22} 8. Relator was evaluated at the J. Leonard Camera Rehabilitation Center February 15 and February 16, 1990. It was noted that relator "may have reemployment potential" and that "rehabilitation services should be offered." However, it was also noted that rehabilitation services were discussed but that relator "expressed no interest in getting involved." The final vocational summary listed the following assets and limitations relative to rehabilitation:
Based on psychometric testing, worksamples, and behavior observation results, Ms. Guthrie appears to have the following VOCATIONAL ASSETS:
1. Because she has no source of income she may, therefore, have a monetary incentive to participate in rehabilitation programming and/or a return to work.
2. Quality of her work was above average as demonstrated on Multi-Level Sorting (see Valpar Worksample results).
3. Her academic skills were generally average (see WRAT-R and SRA Reading Index results).
Ms. Guthrie appears to have the following VOCATIONAL LIMITATIONS:
1. She is 58 years of age.
2. She has a limited education (see Education).
3. She has an unskilled work history (see Work History).
4. She has been off work for ten years. Even though she went back to work for three years after her allowed injuries it was her friends at work rather than she, herself, who did her job.
5. Her physical capacities have decreased below competitive levels (see Physician's report).
6. She is not involved in any physical exercise program at the present. She has been involved in a physical therapy program in the past where she attended six times per week for approximately four months. She walks slowly approximately one mile per day five to six days per week at the present.
7. She takes three prescribed medications as needed reportedly.
8. Her work pace was consistently below average (see Valpar Worksample results).
9. She complained of her lower back and shoulders hurting when reaching at all on Valpar Size Discrimination. On Valpar Multi-Level Sorting she complained of being in so much pain and discomfort that she got a headache, felt like she might pass out and had to take a break. She was noted to sigh frequently. Later she complained of severe pain in her neck, right shoulder, right arm, across her shoulders down to her back, and in her legs. She went on to state that she ex-perienced numbness in her right arm, hand, and shoulder. She stated that [she] is unable to lift, bend, sit, or stand for a very long period. She stated she is unable to hold up her head because of pain and a lack of strength. She stated that it hurts to swallow as she was observed grimacing. She stated that she has eyesight difficulties because of neck muscle problems during the last year or so. On the way from Tennessee to this Center she complained of heart palpitations and had to stop at a hospital emergency room. She stated that she needs an eye examination but is unable to afford it. Finally, she stated that her husband is dying of leukemia and has approximately one year to live.
(Emphasis sic.)
 {¶ 23} 9. Relator was examined by John Brown, M.D., on February 16, 1993. In his reported dated February 23, 1993, Dr. Brown correctly identified the allowed conditions in relator's claim and then opined as follows:
The lumbar laminectomy in 1963 apparently gave her a satisfactory result. She returned to work after that and did very well. The spine fusion in 1985 apparently was helpful also. X-rays revealed that there was a solid fusion between C6-7 and the foramina and the rest of the cervical area were not obstructed. The L3-4 disc space was narrowed and there was some narrowing of L5-S1 interspace, some slight stenosis at L4-5. It would be my opinion that the claim allowance of #76-32730 would be considered as 25% of the whole person for the neck, 25% for the lumbar area. The nerve problem would be included in the neck since that is the source of the irritation of the nerves. This would be 44% for the entire allowance of claim #76-32730. Claim #77-50422, I would consider the impairment from the shoulder on the right to be 10% of the whole person. The right shoulder is included in the allowance for claim #76-32730 with the scapular muscles. This 10% allowance combines with the 44% for 50% for the entire allowed claims according to the guidelines of the AMA.
 {¶ 24} 10. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on February 16, 1993. Relying upon the medical reports of Drs. Mays, Louis, Johnson, and Brown, the commission concluded that relator's allowed conditions significantly restricted her capacity to engage in gainful work activity. The commission then discussed relator's nonmedical disability factors and concluded that she was permanently and totally disabled.
 {¶ 25} 11. In January 2000, Elder Beerman was assessed approximately $75,000 in Disability Workers' Relief Fund ("DWRF") reimbursement payments. The assessment was to reimburse the Ohio Bureau of Workers' Compensation ("BWC") for DWRF payments made to relator retroactive to the date she was awarded PTD compensation.
 {¶ 26} 12. The record shows that notice of the hearing was mailed to Elder Beerman at the following address: "40 N. Ludlow Street[,] Dayton OH 45410." The record also shows that notice of the hearing and a copy of the SHO's order was mailed to "Industrial Advisors Bureau" which was identified as the third-party administrator for Elder Beerman at the following address: "P.O. Box 18200[,] Columbus, OH 43218." It is undisputed that no one was present on behalf of Elder Beerman at the hearing on relator's application for PTD compensation.
 {¶ 27} 13. On August 21, 2003, Elder Beerman filed a motion requesting relief from the February 16, 1993 commission order granting relator's application for PTD compensation pursuant to R.C. 4123.522. Specifically, Elder Beerman noted that notice of the hearing was mailed to the incorrect address for Elder Beerman and that notice of the hearing and a copy of the order was mailed to the incorrect third-party administrator. According to Elder Beerman, in June 1987, Elder Beerman changed its third-party administrator Industrial Advisor's Bureau to Hunter Consulting.
 {¶ 28} 14. Elder Beerman's motion was heard before an SHO on November 14, 2003, and was granted. Specifically, the order states as follows:
The Staff Hearing Officer finds that the authorized employer representative, Hunter Consulting Company, did not receive notice of the permanent total disability hearing scheduled for 02/16/1993. Based on a review of Bureau of Workers' Compensation records on file it is found that Hunter Consulting Company has represented the named employer, The Elder Beerman Stores Corporation; since June, 1987. When notice was sent regarding the 02/16/1993 permanent total disability hearing Hunter Consulting was never noticed of this hearing because notice of hearing was incorrectly sent to Industrial Advisor['s] Bureau.
Therefore, pursuant to O.R.C. 4123.52 based on the failure of the authorized employer's representative, Hunter Consulting Company, to receive notice of the 02/16/1993 permanent total disability hearing, the order mailed 06/08/1993 granting permanent total disability benefits in this 76-32730 claim (and in claim 77-50422) is hereby vacated. Therefore, the 03/18/1987 permanent and total disability application is to reset on the next available Staff Hearing Officer docket. It is noted that no new medical examinations need to be scheduled as all allowed conditions in this 76-[32730] claim and claim 77-[50422] were previously examined as outlined in the 01/15/1993 statement of facts.
No appeal was taken from this decision.
 {¶ 29} 15. On April 30, 2004, relator's application for PTD compensation was heard with all parties present. At that time, the SHO determined that relator's application be held in abeyance pending a new out-of-state medical examination, based solely upon the allowed conditions. Thereafter, the SHO indicated that relator's application would be set for a new hearing. Specifically, the SHO indicated the following questions needed to be addressed:
* * * Based solely on the allowed conditions of muscle strain cervical and lumbar spine, right scapular muscular, stretch injury to ulnar nerve, and stretch injury to median nerve in the area of C-6 (claim 76-32730) and right elbow, hip, and right shoulder (claim 77-50422) the examining physician is to answer the following questions[:]
1) Is the claimant capable of performing any type of sustained remunerative employment;
2) What is claimant's whole body impairment as related solely to the allowed condition of claim 76-32730;
3) What is claimant's whole body impairment related solely to the allowed condition of claim 77-50422;
4) What is claimant's total whole body impairment considering solely the allowed condition of both claims;
5) If the claimant is capable of performing some level of work (even part-time employment) at what physical level can she work? Specifically, sedentary, light, medium, heavy, or very heavy?
 {¶ 30} 16. Relator was examined by James P. Little, M.D., who issued a report dated July 15, 2004. Dr. Little identified the following diagnoses:
1. Muscle strain of cervical and lumbar spine.
2. Right scapular muscular strain.
3. Stretch injury to right ulnar nerve (normal NCSs).
4. Stretch injury to the median nerve and the area of C-6 (normal EMG and NCSs).
5. Right shoulder and right elbow paijn [sic] (see number 2 below.
6. Right hip pain.
Dr. Little also identified the following additional diagnoses affecting relator:
1. Status post lumbosacral spine surgery (1963) for right lower extremity radicular symptoms secondary to disk disease.
2. Status post anterior cervical diskectomy with fusion (September 1985) for cervical disk disease with right cervical radiculopathy.
3. Atherosclerotic cardiovascular disease with history of MI and pacemaker placement (September 2002).
4. History of renal lithosis (2000) treated conservatively.
5. Hypertension.
Dr. Little provided his physical findings and concluded as follows:
Mrs. Guthrie has a 25 to 30 year history of chronic cervical and lumbosacral radicular pain. Medical records indicate a couple of lumbosacral surgical spine procedures (cervical fusion/diskectomy and lumbosacral diskectomy) for radicular symptoms, but the patient has had no evidence of objective imaging abnormalities such as cord or root compression. The patient is scheduled for follow up imaging of the cervical and upper thoracic spine tomorrow which has been ordered by her primary care physician, Dr. Warren Jones. Related to the diagnoses of her reports of median and ulnar "stretch injuries", the patient's electrodiagnostic studies in the past have been unremarkable. She does report bladder inconti-nence, but I do not see any evidence of bladder studies or separate evaluation by an [sic] urologist. In fact, the patient's only managing physician for the past several years has been her primary care physician, Dr. Warren Jones, here in Kingsport, TN. Parts of today's examination are non physiological including the patient's pattern of sensory loss and her ability to heel walk but not actively dorsa flex the right ankle to range. Straight leg raising test is positive supine and negative sitting.
In accordance with the AMA Guide to the Evaluation ofPermanent Impairment, 4th Edition, in the absence of objective abnormalities including diagnostic testing, the allowed conditions (see number 6 diagnoses related to current impairment rating) do not generate a percent partial permanent impairment. The 4th Edition does not allow assigning an impairment related to [sic] specifically to pain. Specifically, self limited conditions such as strains and sprains are excluded.
(Emphasis sic.)
 {¶ 31} 17. Elder Beerman submitted a report from Dr. David C. Randolph dated March 6, 2004. Dr. Randolph examined all the medical evidence which was currently in the file and then answered certain questions. First, in response to whether or not relator was permanently and totally disabled in 1993 based solely upon the allowed conditions, Dr. Randolph opined that she was not. Specifically, Dr. Randolph noted that relator's claims were allowed for various muscle strains. He defined a strain as an overstretched muscle with no expectation of significant functional loss of more than a transient nature lasting approximately four weeks. Dr. Randolph opined that any problems relator was currently having were not related to the allowed conditions in the claim. Based solely upon the allowed conditions, Dr. Randolph opined that relator could return to her former position of work as a kitchen helper. Dr. Randolph indicated that Dr. Brown and Edward Eyring, M.D., had based their conclusions upon unallowed and unrelated conditions.
 {¶ 32} Elder Beerman also submitted a February 26, 2004 vocational report prepared by Caston and Associates. Harold L. Caston, Ph.D., concluded that relator could have undergone vocational rehabilitation, that testing indicates she has average intelligence and could learn entry-level jobs, and that she could perform jobs including, but not limited to, cashiering, sales clerk, waitress, telephone operator, telemarketer, and custom service clerk.
 {¶ 33} 18. Dr. Little provided an addendum wherein he opined that relator's allowed conditions had reached maximum medical improvement, asserted that relator had a zero percentage of permanent impairment due to those allowed conditions and concluded that relator was capable of performing sedentary work.
 {¶ 34} 19. On August 20, 2004, relator filed a motion seeking to depose Dr. Little based upon the assertion that there was a substantial disparity between the report of Dr. Little and the reports of Dr. Brown and Dale Fox, M.D.
 {¶ 35} 20. In an order dated December 20, 2004, an SHO denied relator's motion as follows:
Following review of the claim file and the relevant evidence, it is the finding of the Staff Hearing Officer that the injured worker's motion is unreasonable because the alleged substantial disparity is founded on medical examinations performed more than eleven years ago.
There is no recent medical evidence, other than Dr. Little assessing the injured worker's current status due to the allowed conditions.
Therefore, a deposition and/or interrogatories are unreason-able, and the claimant's motion is denied. The processing of all pending issues is to resume.
 {¶ 36} 21. Relator filed a motion for reconsideration which was denied by order of the commission mailed January 28, 2005.
 {¶ 37} 22. On January 21, 2005, a hearing was held before an SHO on relator's PTD application. Five preliminary issues were raised before the SHO. First, relator asserted the defense of laches regarding the granting of the R.C. 4123.522 motion. Specifically, the SHO stated as follows:
* * * It was argued that the employer because of numerous examinations and communications going on concerning the processing of the IC-2 application must have known of the existence and processing of this application. Further, because the .522 motion wasn't filed until over ten years after the IC-2 application was granted, it was asserted that it is unreason-able to believe that the employer was unaware of the permanent total disability payments.
It is found that the claimant could have raised this laches defense at the 11/14/2003 .522 hearing. The claimant, though properly noticed, failed to attend such hearing. The claimant also failed to appeal this order so as to raise the laches defense on appeal. Consequently, the 11/14/2003 order has become a final order, and because the 11/14/2003 order is a final order, it is res judicata, and the defense of laches is not available to the claimant.
 {¶ 38} Relator also argued that additional medical evidence should not have been submitted. The SHO stated as follows regarding this issue:
The employer as of the 04/30/2004 hearing submitted a medical review performed by Dr. Randolph on 03/06/2004 regarding the issue of permanent total impairment. The employer also submitted a vocational report by [Dr.] Caston dated 02/26/2004. The claimant objected to consideration of either of these reports arguing that no medical or vocational evidence can be considered beyond the 02/16/1993 original date of hearing.
Because this IC-2 application was filed on 03/18/1987 it is found that the administrative rules governing the processing of permanent total disability in existence as of 03/18/1987 should apply. Ohio Administrative Code Section 4121-3-15(G) as written as of 03/18/1987 would then govern the processing of this application. A review of this Administrative Code Section reveals that there are no time limits imposed regarding the submission of medical reviews by the employer or the submission of vocational reports. Later, pursuant to the Industrial Commission adopting the Permanent Total Dis-ability Policy Manual in Ohio Administrative Code 4121-3-34, there were time limitations imposed on the submission of medical and vocational reports; however, these time limits were imposed only for IC-2 applications filed as of 06/01/1995.
Consequently, it is ruled that because the Administrative Code rules governing the processing of IC-2 application in existence as of 03/18/1987 did not set any time limits on when medical review or vocational reports could be submitted, Dr. Randolph's 03/06/2004 medical review and [Dr.] Caston's 02/26/2004 vocational report were considered herein.
 {¶ 39} Relator also raised the issue of whether or not her 1985 cervical fusion at C6-7 should be an allowed condition recognized in the claim. In this regard, the SHO stated as follows:
The next procedural issue to be addressed is whether or not the claimant's 1985 cervical fusion at C6-7 is to be recognized as part of claim 76-32730. Based on testimony at hearing and a review of the records this surgical procedure was apparently authorized and paid for by the BWC.
Based on the holdings of State ex rel. Turner v. Indus. Comm.
(2000), 89 Ohio St.3d 373 and Williams v. Indus. Comm. (1984)11 Ohio St.3d 240, wherein it was held that implicit recognition of a medical condition is not permitted, it is found that without a formal order allowing the cervical disc fusion conditions, said 1985 cervical fusion and the conditions causing said surgery to be performed are not recognized as part of claim 76-32730.
 {¶ 40} Relator next contested the appropriateness of ordering a new medical examination and the SHO stated as follows:
The claimant also raised the issue of the appropriateness of ordering a new medical exam which was performed by Dr. Little in July, 2004. It is found that because the IC-2 application filed 03/18/1987 is still pending pursuant to the vacating of the 02/16/1993 Commission order granting said application, that it was appropriate to order a new Com-mission exam especially in light of the finding in this order that all prior medical exams relied on to grant the IC-2 application were defective in that they all considered non-allowed conditions.
 {¶ 41} The last preliminary issue addressed was whether or not the commission abused its discretion by denying relator's request to take Dr. Little's deposition. In this regard, the SHO stated as follows:
Lastly, the claimant reiterated her objection to the denial of her request to take Dr. Little's deposition. This request was denied per order dated 12/20/2004 and that denial was affirmed per order dated 01/20/2005. As no further appeals as to that issue are of record, that issue is res judicata.
 {¶ 42} Thereafter, the SHO addressed the merits of relator's PTD application. The SHO concluded that the reports of Drs. Mays, Louis, Johnson, and Brown, which were relied upon on February 16, 1993 to grant relator's application for PTD compensation, could not be relied upon because review of those reports indicated that the doctors considered nonallowed conditions. As such, the commission relied upon the report of Dr. Little and concluded that relator could perform sedentary work. Thereafter, the commission addressed the nonmedical factors as follows:
In that light the claimant's disability factors are found to be as follows: the claimant is 72 years old, (she was 47 when she last worked in 1979), she has a ninth grade education, and she has worked as a waitress, cook, and kitchen helper.
The claimant's present age, 72, would seem to be a negative factor in terms of her being re-employed. However, it is noted that when the claimant last worked, in 1979, she was only 47 years old. When the claimant's age is viewed at that point, it would mean that she had potentially almost twenty (20) years left in the work force. Claimant's age should be viewed as of the time she last worked because from the time the claimant last worked forward is the amount of time she had to potentially retrain for a position within her sedentary restrictions. Therefore, when the claimant's age is viewed at age 47, when she last worked as it is for purposes of this order, her age is viewed as a positive factor because at age 47 she had, as previously indicated, from that point forward, close to twenty (20) years to retrain for sedentary type work. In this light it is found that the claimant's prior job history as a waitress, cook, and kitchen helper would not have given her transferable skills for sedentary work, consequently, she would have needed to undergo at least a brief training program to qualify her for sedentary employment.
In regard to the claimant's potential to be retrained for sedentary employment, attention is directed toward her 1990-1991 vocational evaluation by the Industrial Commission's Rehabilitation Division. An evaluation performed in February, 1990, concluded that the claimant had average learning ability with her reading and spelling abilities listed as above average. Her arithmetic ability was noted to be average. Consequently, while the claimant does have a limited ninth grade education, it is found that based on this evaluation, the claimant did and does possess at least average literacy skills and an average ability to learn new job skills.
These vocational reports further noted the claimant had a mixture of positive and negative vocational assets and limitations. A 08/02/1990 vocational report did state that while the prognosis for rehabilitation services were guarded, the report concluded that rehabilitation services should be offered. However, after the options of rehabilitation were discussed with the claimant, the clamant expressed no interest in said services and vocational rehabilitation was therefore not pursued.
In regard to the claimant's obligation to pursue retraining or rehabilitation, where feasible, the following case law is cited.
The cases of State ex rel. Speelman v. Indus. Comm. (1992)73 Ohio App.3d 757, State ex rel. B.F. Goodrich v. Indus. Comm.
(1995) 73 Ohio St.3d 525 and State ex rel. Bowling v. Natl. CanCorp. (1996) 77 Ohio St.3d 148 stand for the proposition that a claimant has a responsibility to undergo appropriate and reasonable medical and/or vocational rehabilitation which will either enable a claimant to increase the residual functional capacity and/or obtain new marketable employment skills and thereby increase his potential employability. Furthermore, Stateex rel. Wilson v. Indus. Comm. (1997) 80 Ohio St.3d 250 stands for the proposition that it is not unreasonable to expect a claimant to participate in return to work efforts to the best of his or her abilities or to take the initiative to improve re-employment potential. Wilson also states that permanent total disability compensation is "compensation of last resort." In this case, the Industrial Commission finds that the injured worker has not exhausted all reasonable avenues with respect to permanent total disability.
 {¶ 43} As such, the SHO denied relator's application for PTD compensation as follows:
In summary then, the IC-2 application is denied for the following reasons. The claimant has not pursued retraining or rehabilitation such that she could have been qualified for work within her residual capacity (sedentary), even though the option of retraining was offered to her. Further, the claimant could have pursued such retraining from the age of 47 forward and failed to do so. Consequently, it is found that the claimant had the time, opportunity, and literacy ability to obtain the skills necessary for her to be employed at her residual sedentary level, and her failure to pursue said skill training now precludes the granting of permanent total impairment.
This order is based particularly upon the reports of Dr. Little and [Dr.] Caston.
 {¶ 44} 23. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 45} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 46} In this mandamus action, relator challenges the five preliminary determinations made by the commission in this case and challenges the commission's ultimate decision, on the merits, to deny her application for PTD compensation. The magistrate will first address the five preliminary issues in the order in which they were previously set out in this decision.
 {¶ 47} Relator first challenges the commission's finding that Elder Beerman was entitled to relief pursuant to R.C. 4123.522 on the basis that the defense of laches should have been applied. For the reasons that follow, this magistrate disagrees.
 {¶ 48} R.C. 4123.522 provides, in pertinent part, as follows:
The employee, employer, and their respective representatives are entitled to written notice of any hearing, determination, order, award, or decision under this chapter * * *. An employee [or] employer * * * is deemed not to have received notice until the notice is received from the industrial commission or its district or staff hearing officers, the administrator, or the bureau of workers' compensation by both the employee and his representative of record, both the employer and his representative of record, and by both the administrator and his representative.
If any person to whom a notice is mailed fails to receive the notice and the commission, upon hearing, determines that the failure was due to cause beyond the control and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in the notice, such person may take the action afforded to such person within twenty-one days after the receipt of the notice of such determination of the commission. Delivery of the notice to the address of the person or his representative is prima-facie evidence of receipt of the notice by the person.
 {¶ 49} R.C. 4123.522 entitles the employee, employer, and their respective representatives, to notice of all orders, determinations, and decisions issued by the BWC or the commission. If an entity entitled to notice, through no fault or neglect of its own, does not receive an order, the statute provides relief by permitting the party to file a belated appeal to the order, once discovered.
 {¶ 50} In the present case, Elder Beerman presented evidence that it had taken the steps necessary to change its third-party administrator from Industrial Advisor's Bureau to Hunter Consulting in June 1987. Further, Elder Beerman presented evidence that the order which was mailed to Elder Beerman was mailed to an incorrect address. It is undisputed that no one appeared on behalf of Elder Beerman at the 1993 hearing on relator's PTD compensation. As such, based upon the evidence, the commission determined that, through no fault of its own, neither Elder Beerman nor its representative received notice of the proceedings and neither had knowledge of the substance of the information contained in the notice. As such, Elder Beerman met its burden of proof entitling it to relief under R.C. 4123.522.
 {¶ 51} In spite of the fact that Elder Beerman met its burden of proof, relator argued that the doctrine of laches should bar Elder Beerman from relief. Laches precludes a complaining party from moving forward when that party chooses to allow an unreasonable amount of time to pass before complaining. The elements of laches are: (1) an unreasonable delay or lapse of time in asserting a right; (2) the absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. State ex rel. OhioDept. of Mental Health v. Nadel, 98 Ohio St.3d 405,2003-Ohio-1632.
 {¶ 52} Elder Beerman had met its burden of proof entitling it to relief under R.C. 4123.522. The commission determined that Elder Beerman did not have knowledge of the hearing, that Elder Beerman had an excuse for the delay, and that there was not an unreasonable delay or lapse of time on the part of Elder Beerman in asserting that right. Although a significant amount of time had passed, the commission concluded that relator would not be prejudiced by having a new hearing. The magistrate does not find that the commission abused its discretion in this regard and, further, the commission determined that res judicata applied at this hearing to bar relator's further arguments because relator had failed to raise the defense of laches at the November 14, 2003 hearing on Elder Beerman's request for relief pursuant to R.C. 4123.522, and that relator had failed to appeal from that order. As such, the commission correctly found that res judicata applied.
 {¶ 53} Relator next contends that the commission abused its discretion by permitting Elder Beerman to present medical evidence opposing relator's application for PTD compensation. Relator points out that in the November 14, 2003 order granting Elder Beerman relief pursuant to R.C. 4123.522, the SHO stated that no new medical examinations needed to be scheduled because all allowed conditions had been previously examined as outlined in the January 15, 1993 statement of facts. Because the SHO made this statement in the November 14, 2003 order, relator claims that Elder Beerman was precluded from presenting any additional medical evidence. This magistrate disagrees.
 {¶ 54} In the present case, the magistrate finds the following to be relevant: (1) Elder Beerman did not have notice of the 1993 PTD hearing and did not, prior to the November 1993 hearing, have relator examined by a physician of Elder Beerman's choice; and (2) as the commission determined, because relator's application was filed March 18, 1987, it was proper to apply the Ohio Administrative Code rules governing the processing of PTD applications which was in existence in March 1987. Pursuant to the provisions of Ohio Adm. Code 4121-3-15(G) in effect at that time, there were no time limits imposed regarding the submission of medical reports by the employer or the submission of vocational reports. As such, the magistrate finds that the commission did not abuse its discretion in permitting Elder Beerman to submit the March 6, 2003 medical report of Dr. Randolph as well as Dr. Caston's February 26, 2004 vocational report.
 {¶ 55} Relator next challenges the commission's determination that relator's 1985 surgical fusion at C6-7 is not, in and of itself, a recognized condition in this claim. Relator argues that, not only did the BWC authorize and pay for the surgery, but relator also received TTD compensation during her convalescence period following the surgery.
 {¶ 56} In denying relator's arguments, the commission relied upon State ex rel. Turner v. Indus. Comm. (2000),89 Ohio St.3d 373, and State ex rel. Williams v. Indus. Comm. (1984),11 Ohio St.3d 240, for the proposition that implicit recognition of a medical condition is not permitted. In Williams, the claimant's claim was allowed for hip strain and probable low back strain. The claimant applied for and received a determination of the percentage of permanent partial disability ("PPD"). Later, the claimant received an increase in his percentage of PPD compensation based in part upon the report of Dr. Owens who had considered the condition of compression fracture. Later, in applying for PTD compensation, the claimant argued that, because the commission had previously relied upon the report of Dr. Owens, the commission had implicitly allowed his claim for compression fracture. The court ultimately held that, in relying upon Dr. Owens' report, the commission did not need to necessarily accept each and every one of Dr. Owens' findings and that the commission's procedures for the allowance of compensable injuries are well-established and do not permit implicit recognition as the claimant had suggested.
 {¶ 57} Furthermore, in Turner, the claimant's claim had been allowed for herniated nucleus pulposis at L5-S1 and right sciatica. Later, the claimant had successfully secured payment from the BWC and the commission for treatment relating to lumbosacral sprain. However, the commission never formally allowed the claimant's claim for lumbosacral sprain. Later, after a substantial period without treatment, the claimant sought to reactivate her claim on the basis of lumbosacral sprain and the commission denied her application on the basis that lumbosacral sprain was not an allowed condition. In mandamus, the court noted that the commission speaks only through its orders and that there is a prohibition against implicit recognition of medical conditions. The claimant cited cases wherein the commission had paid compensation to other claimants whose claims had been specifically allowed for specific back conditions where the claimants requested compensation based on more general back conditions. The court rejected the claimants' assertions indicating that those cases did not serve as a mandate. The court held that the commission was within its prerogative to reach the conclusions it reached in those cases and found that the commission did not abuse its discretion.
 {¶ 58} In the present case, relator's claim was allowed for a stretch injury to the median nerve in the area of C6. Based upon review of the medical records, it is apparent that relator had some pain in her neck; however, her claim was never allowed for anything further than the stretch injury to the median nerve in the area of C6. While the commission did authorize neck surgery, paid for that surgery, and paid for a period of TTD compensation following the surgery, there is nothing in the record to indicate that relator either requested or that the commission or BWC formally recognized her claim for any degenerative neck conditions or aggravation of degenerative neck conditions. As the case law indicates, payment for surgery and payment of compensation following surgery does not implicitly recognize a claim for any conditions. As such, the commission was correct in finding that relator's claim had not been additionally allowed for any conditions relative to the 1985 neck surgery.
 {¶ 59} Relator also challenges the appropriateness of the commission's decision to order a new medical exam. That exam was performed by Dr. Little in July 2004. In determining that it was appropriate to refer relator for a new medical exam, the commission specifically noted that the prior medical reports which had been relied upon to grant relator's application for PTD compensation in November 1993, had all addressed nonallowed conditions. Because of that, the commission determined that it was appropriate to refer relator for a new medical examination and relator was examined by Dr. Little. Except for relator's argument that the commission had previously determined that no new medical exams would be necessary, relator cites to no law which would preclude the commission from determining that a new medical examination was necessary. To the contrary, upon review of the evidence previously relied upon by the commission, the magistrate agrees with the commission's analysis that those doctors had considered nonallowed conditions when they rendered their reports. Furthermore, R.C. 4123.53 permits the commission to require any employee seeking compensation to submit to medical examinations and vocational evaluations at any time. See, also,State ex rel. Goodyear Tire Rubber Co. v. Indus. Comm.
(1974), 38 Ohio St.2d 57. As such, the magistrate finds that the commission did not abuse its discretion in referring relator for a new medical examination. Further, relator could have submitted additional medical evidence herself; however, she chose not to do so.
 {¶ 60} Lastly, in terms of preliminary challenges, relator contends that the commission abused its discretion by not permitting her to take Dr. Little's deposition. This magistrate disagrees.
 {¶ 61} R.C. 4123.09 provides as follows:
In claims filed before the industrial commission or the bureau of workers' compensation by injured employees and the dependents of killed employees on account of injury or death sustained by such employees in the course of their employ-ment, the commission and bureau may cause depositions of witnesses residing within or without the state to be taken in the manner prescribed by law for the taking of depositions in civil actions in the court of common pleas.
 {¶ 62} Pursuant to R.C. 4123.09, the commission has discretion to permit depositions. Formerly, motions to depose a doctor were generally granted when there was a substantial disparity between the reports of doctors; however, that position was expounded upon in State ex rel. Cox v. Greyhound Food Mgt.,Inc., 95 Ohio St.3d 353, 2002-Ohio-2335, wherein the court noted that depositions are not necessary simply because two physicians reached different conclusions as to whether or not a claimant can return to work. Instead, the court noted that the requirement in the Ohio Administrative Code that a substantial disparity exist between doctors' reports is not very useful in determining the reasonableness of a deposition request. Instead, the court focused on whether a defect exists that can be cured by deposition and whether the disability hearing is an equally reasonable option for resolution. In the present case, the magistrate finds that the commission did not abuse its discretion in denying relator's motion to depose Dr. Little. The commission referred back to the December 20, 2004 order wherein an SHO had denied the motion because the disparity between the report of Dr. Little and the other medical reports performed more than 11 years ago existed because, contrary to the other doctors, Dr. Little only considered allowed conditions. The magistrate finds that this did not constitute an abuse of discretion.
 {¶ 63} Turning to the merits, the commission relied upon the medical report of Dr. Little and concluded that relator could perform sedentary work. Thereafter, the commission examined the nonmedical factors and placed emphasis almost exclusively upon relator's failure to seek appropriate and reasonable medical and/or vocational rehabilitation to increase her residual functional capacity and/or obtain new marketable employment skills increasing her potential employability in spite of the fact that relator had at least 20 years of potential employment remaining. (Relator was 47 years of age when she last worked in 1979.) However, the commission's analysis fails to take into consideration that five years and nine months after the date she last worked, relator had a cervical discectomy at C6-7 and received one year and 11 months of TTD compensation. At that time, she filed her application for PTD compensation. While the reports from the J. Leonard Camera Center indicated that rehabilitation was possible, the commission must have disagreed since relator was awarded PTD compensation retroactive to July 6, 1987, pursuant to the February 16, 1993 order of the commission. As such, in reality, the period wherein relator did not pursue rehabilitation was the five years and nine months period following the date she last worked and before she had surgery. It would have been incongruous for relator to receive TTD compensation, apply for and ultimately receive PTD compensation while, at the same time, pursuing rehabilitation. From November 1, 1979 through January 21, 2005 (25 years, three months), relator had received, in good faith, TTD compensation for one year and 11 months and PTD compensation for 17 years and six months. As such, any failure on the part of relator to seek rehabilitation which the commission can rightfully apply is five years and nine months out of the last 25 years and not the 20 years relied on in denying her application for PTD compensation. The magistrate finds that this constitutes an abuse of discretion.
 {¶ 64} Based on the foregoing, the magistrate finds that relator has demonstrated that the commission abused its discretion by denying her PTD application based solely on the fact that relator had not taken advantage of rehabilitation efforts over the past 20 years. In all other respects, the magistrate finds that the commission did not abuse its discretion relative to relator's other arguments. As such, a writ of mandamus should be issued ordering the commission to vacate its order denying relator's application for PTD compensation solely because she failed to pursue rehabilitation for 20 years and the commission should rehear this matter and determine whether or not relator is or is not entitled to PTD compensation in accordance with this decision.
 /s/ Stephanie Bisca Brooks
 STEPHANIE BISCA BROOKS MAGISTRATE