OPINION
{¶ 1} In this original action, relator, Sonoco Products Co., requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which granted permanent total disability ("PTD") compensation to respondent Rhett A. DeCamp ("claimant") and ordering the commission to find that claimant is not entitled to said compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion by granting claimant's application for PTD, and therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator had filed the following five objections to the magistrate's decision:
A. THE MAGISTRATE MISQUOTED THE SUPPLEMENTAL MEDICAL REPORT OF DR. KUHLMAN OBTAINED IN CONNECTION WITH THE ISSUE OF FRAUD IN THE CLAIM.
B. THE MAGISTRATE CONDUCTED INAPPROPRIATE DE NOVO ANALYSIS TO REACH A CONCLUSION CONTRARY TO THE UNREFUTED EVIDENCE OF RECORD.
C. THE MAGISTRATE MADE A MISTAKE OF FACT WITH REGARD TO THE REHABILITATION STEPHENSON FACTOR.
D. THE MAGISTRATE CONDUCTED AN INAPPROPRIATE DE NOVO REVIEW OF ISSUES RAISED BY SONOCO.
E. THE EMPLOYER IS ENTITLED TO ADJUDICATION OF THE ISSUE OF FRAUD IDENTIFIED BY THE COMMISSION.
 {¶ 4} In its first objection, relator argues that the magistrate misquoted Dr. Kuhlman's report. This is simply unfounded. Dr. Kuhlman's report states:
However, I must still report that Mr. DeCamp has significant restrictions. This is because of the following: he has had three lower back surgeries. He has other non work related problems that will impair his vocational abilities. Specifically he has had two neck surgeries in 1999 and 2000.
 {¶ 5} Relator suggests that Dr. Kuhlman conveys that the significant restrictions are not identified as a result of the allowed conditions of this claim, but rather are a result of a multitude of medical conditions, most of which are not work related. We disagree. After reviewing Dr. Kuhlman's reports, we find no merit to relator's first objection. Accordingly, we overrule relator's first objection.
 {¶ 6} In the second objection, relator argues that the magistrate inappropriately conducted a de novo analysis of the matter. While relator advances that there was "videotape evidence of fraudulent activity," we note that the videotape, and Dr. Kuhlman's report and addendum, were presented to the commission, and the staff hearing officer's report references the videotape having been reviewed for purposes of addressing medical impairment. As this court has consistently held, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State exrel. Treece v. Indus. Comm. (1981), 68 Ohio St.2d 165. Upon review, we do not find that the magistrate inappropriately conducted a de novo review, but rather that the magistrate identified evidence in the record that supports her decision to recommend a denial of the requested writ. Accordingly, we overrule relator's second objection.
 {¶ 7} In its third objection, relator argues that the magistrate made contradictory findings of fact. Specifically, relator contends that on page two of the magistrate's decision, she states that claimant had his third back surgery in March 2002, and "has not returned to work since that date," but then in the next paragraph, the magistrate states that the claimant last worked in 2000. First, we note that these two statements are not contradictory. More importantly, as the commission correctly notes, the magistrate stated the facts as they were presented to her through the parties' stipulation. The record reflects that claimant's counsel stated at the hearing on June 30, 2004, "[b]ut it was this surgery that took him out of the work force for the time in March 2002." (June 27, 2004 Tr. at 6.) Thus, the facts stated by the magistrate are the facts as they were presented in the parties' Stipulation of Record Evidence. Consequently, we find that the magistrate did not make a mistake of fact. Upon further review of the record, and relator's argument as to the effect of the alleged error, we do not find relator's objection to be well-taken. Accordingly, we overrule relator's third objection.
 {¶ 8} In relator's fourth and fifth objections, relator essentially re-argues the same points addressed in the magistrate's decision. However, for the reasons set forth in the magistrate's decision, we do not find relator's objections to be well-taken. Accordingly, we overrule relator's fourth and fifth objections to the magistrate's decision.
 {¶ 9} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Brown and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Sonoco Products Co., : Relator, : v. : No. 05AP-156 The Industrial Commission of Ohio : and Rhett A. DeCamp, : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 21, 2005 Vorys, Sater, Seymour and Pease LLP, J. Scott Jamieson andCorrine S. Carman, for relator.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
Gallon Takacs Co., L.P.A., and Theodore A. Bowman, for respondent Rhett A. DeCamp.
 IN MANDAMUS {¶ 10} Relator, Sonoco Products Co., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Rhett A. DeCamp ("claimant") and ordering the commission to find that claimant is not entitled to said compensation.
Findings of Fact:
 {¶ 11} 1. Claimant sustained a work-related injury on January 23, 1992, and his claim has been allowed for: "strain — right side of low back * * * ruptured lumbar disc at L4-L5."
 {¶ 12} 2. Claimant returned to work following his 1992 injury until he reinjured his back in November 1996. Claimant has had three surgeries for his back, the first surgery was in April 1997. Claimant returned to work three months later; however, he left work again in June 1998 and had his second back surgery in August 1998. Claimant again returned to work and had his third back surgery in March 2002. Claimant has not returned to work since that date.
 {¶ 13} 3. On June 20, 2003, claimant filed his application for PTD compensation. Claimant was age 59 at the time he filed the application, had last worked in 2000, had completed the 11th grade in school, indicated that he could perform basic math, but that he could not read or write well, and indicated that his previous work history consisted of a winder operator, laborer and mechanic.
 {¶ 14} 4. In support of his PTD application, claimant submitted the March 20, 2003 report of Cheng-Te Lin, M.D., who indicated that claimant continues to suffer persistent lower back pain shooting into his leg and hip area, he has been unable to work in the past two years, and he is permanently and totally disabled due to his lower back and leg pain.
 {¶ 15} 5. An independent medical evaluation was performed by Kurt A. Kuhlman, D.O., on August 12, 2003. Dr. Kuhlman assessed a 13 percent whole person impairment and indicated that claimant would be capable of performing light-duty work with the following permanent restrictions:
* * * [H]e should not lift more than 20 pounds. He should not perform repetitive bending, twisting or lifting with his lower back. He should have a job that allows him to sit and stand in different positions throughout the day. His job should not require prolonged standing of more than half an hour without a rest break. His job should not require walking of more than 10-15 minutes without a rest break.
 {¶ 16} 6. An independent medical evaluation was also performed by Harvey A. Popovich, M.D., on September 4, 2003. Dr. Popovich opined that claimant had reached maximum medical improvement ("MMI"), he had a permanent partial impairment of five percent and he was capable of performing work at the sedentary level.
 {¶ 17} 7. Several vocational reports were submitted. Barbara Gearhart submitted a report dated October 17, 2003. Ms. Gearhart noted that claimant had persisted in maintaining employment beyond his physical capacities for a long time despite significant pain and discomfort, his prior work as a winder operator was classified as heavy work, he does not possess transferable skills from his prior employment, his lack of a high school diploma would be an impediment, and he was not a good candidate to return to work in any capacity.
 {¶ 18} 8. The record also contains the November 6, 2003 vocational report of John E. Sterba. Based upon the report of Dr. Lin, Mr. Sterba opined that claimant was not employable. Based upon the reports of Drs. Popovich and Kuhlman, Mr. Sterba indicated that there were no jobs which claimant could immediately perform; however, he indicated that after a brief period of on-the-job training and/or obtaining his GED, claimant could perform the following jobs: "small products assembly, light duty bench workers, off bearers, production inspectors testers, graders, and sorters." Mr. Sterba indicated that claimant's age was a moderate obstacle in his ability to return to gainful employment, he may need refresher training or computer skills training to qualify for suitable sedentary employment and, consequently, was educationally disadvantaged for employment which requires a high school level of education, and that his prior work experience in skilled and semi-skilled work would serve him well in future employment.
 {¶ 19} 9. The record also contains the April 15, 2004 vocational report of Craig Johnston who opined that claimant maintained the ability to engage in entry-level sustained remunerative employment and that, if motivated, claimant would be capable of short-term and on-the-job training.
 {¶ 20} 10. During the pendency of claimant's PTD application, the Ohio Bureau of Workers' Compensation Fraud Department received an anonymous tip that claimant was performing activities inconsistent with his potential receipt of PTD compensation. Surveillance was conducted and the resulting videotape and still photos show claimant waxing his recreational truck/camper over the course of an hour. During that time, claimant was observed bending, squatting, kneeling, twisting at the waist and using both upper extremities to conduct the work. Claimant was also observed holding a rifle.
 {¶ 21} 11. Dr. Kuhlman prepared an addendum report after reviewing the video surveillance. In his addendum dated March 24, 2004, Dr. Kuhlman opined that claimant had been exaggerating his lower back symptoms but still noted that claimant has "significant work restrictions." Dr. Kuhlman opined that claimant should not lift more than 20 pounds, could perform some repetitive bending, twisting and lifting for brief periods of time, but not over an eight hour day, claimant should be permitted to sit and stand in different positions during the day avoiding prolonged sitting and walking 30 minutes before needing a break.
 {¶ 22} 12. After a continuance so that the parties could further evaluate the surveillance evidence, claimant's PTD application was heard before a staff hearing officer ("SHO") on June 30, 2004. The SHO relied upon the medical reports of Drs. Popovich and Kuhlman and concluded that claimant has the "physical capacity to be able to perform sustained remunerative employment." Having found that claimant was physically capable of performing some sustained remunerative employment, the SHO then relied upon the vocational report of Mr. Sterba and conducted its own analysis of the vocational factors. The SHO stated as follows:
The Industrial Commission has broad discretion to view a work history or age as negative or positive. State ex. rel. Ewart v.Ind. Comm. (1996), 76 Ohio St. 3d 139. This Staff Hearing Officer finds Mr. DeCamp's age, education and work history all to be a negative asset in terms of his ability to be retrained and re-employed. Mr. DeCamp is 60 years of age and has significant physical limitations. He has a limited eleventh-grade education. While Mr. DeCamp has some skills in material handling, use of hand tools, and equipment operation, this Staff Hearing Officer finds that there is no skill that would be transferable to the sedentary job market. Given Mr. DeCamp's age and education, he could not be expected to adequately adapt to new tools, tasks, procedures and rules involved in performing a new type of work activity, a type of work he has not performed in the past. Being 60 years of age presents its own obstacles in terms of adjusting to any new kind of work activity. When combined with the physical impairment, his manual trade work history, and limited education, being 60 years of age serves as a contributing factor to an inability to make vocational adjustments.
In conclusion, this Staff Hearing Officer finds that Mr. DeCamp does have the physical capacity to engage in sustained remunerative employment. This Staff Hearing Officer finds that Mr. DeCamp's skills, learned in his past trades, have no transferability to a sedentary occupation. This Staff Hearing Officer further finds that, given Mr. DeCamp's age and education, he is at a disadvantage for any attempts at re-education with an aim towards finding sustained remunerative employment.
Based upon the foregoing, this Staff Hearing Officer finds that Mr. DeCamp is permanently and totally disabled due to the allowed conditions within this claim.
The SHO then noted that claimant continued to work with the employer of record and that claimant testified that he would continue to work there if they had any jobs within his restrictions mitigated against any lack of attempt at vocational rehabilitation.
 {¶ 23} 13. Relator's request for reconsideration from the SHO order was denied by order of the commission mailed September 21, 2004.
 {¶ 24} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 27} Relator sets forth six reasons why it believes the commission abused its discretion in granting claimant's application for PTD compensation. Specifically, relator points out that PTD compensation cannot be granted where a claimant is found capable of sustained remunerative employment; the commission erred in finding that claimant had no transferable skills; the commission abused its discretion by failing to address claimant's ability to perform light-duty employment; the commission abused its discretion by finding that claimant was unable to make vocational adjustments; the commission's order is contrary to other cases; and that the commission abused its discretion by failing to consider or address the issue of fraud. For the reasons that follow, the magistrate rejects relator's arguments.
 {¶ 28} First, relator points to that portion of the commission's order where the SHO notes that claimant has the "physical capacity to be able to perform sustained remunerative employment" and contends that, by definition, the SHO found that claimant was capable of working. This magistrate disagrees. The SHO relied upon the medical reports of Drs. Popovich and Kuhlman who opined that claimant could perform at the sedentary to light-duty work levels. After finding that claimant was physically capable of performing at the sedentary to light-duty strength level with restrictions, the SHO went on to discuss the vocational factors pursuant to Stephenson. In any PTD application, the first question addressed by the commission is whether or not, solely from a medical standpoint, claimant is capable of performing some sustained remunerative employment at a specific strength level. In the event that the commission finds that claimant is physically incapable of performing any work activity, then the analysis ends and the commission finds that claimant is permanently and totally disabled. However, where the commission finds that claimant is physically capable of performing some strength level of work activity, then it is incumbent upon the commission to discuss the vocational factors to determine whether or not claimant is capable of performing some sustained remunerative employment. Contrary to relator's arguments, the commission did not abuse its discretion when it found that claimant had the physical capacity, before discussing the vocational factors, to engage in sustained remunerative employment.
 {¶ 29} Relator also contends that the commission abused its discretion by finding that claimant had no transferable skills. Relator points to the vocational report of Mr. Sterba who opined that claimant's work history included skilled and semi-skilled jobs and that the skills performed in his past work would serve him well in future employment. Relator argues that past skilled and semi-skilled jobs clearly produce skills transferable to future employment. Because the commission relied upon Mr. Sterba's vocational report, relator contends that the commission was required to find that claimant had transferable skills. This magistrate disagrees.
 {¶ 30} First, the commission has the discretion to accept or reject vocational reports and conduct its own analysis of nonmedical factors. State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266. Furthermore, the commission can accept part of a vocational report and reject other parts of the vocational report. To bind the commission to a rehabilitation reports conclusion would make the rehabilitation division, and not the commission, the ultimate evaluator of disability, contrary to Stephenson. See State ex rel. Singleton v. Indus.Comm. (1994), 71 Ohio St.3d 117.
 {¶ 31} Mr. Sterba did not say that claimant had "transferable skills." Instead, Mr. Sterba indicated that the skills claimant performed in his past work would serve him well in future employment. Perhaps Mr. Sterba meant that claimant's ability to learn the skills required for skilled and semi-skilled work in the past would serve him well in the future. That does not equate to a finding that claimant has skills transferable to sedentary and/or modified light-duty employment. Regardless, the commission conducted its own analysis of the nonmedical factors and concluded that claimant lacked transferable skills. This does not constitute an abuse of discretion as relator claims.
 {¶ 32} Relator also contends that the commission abused its discretion by failing to address claimant's ability to perform light-duty employment. Relator has misstated the facts before the commission. The medical evidence indicated that claimant could perform sedentary to light-duty work with restrictions. Dr. Kuhlman indicated that in his opinion, claimant could perform light-duty work; however, he would have the following permanent restrictions:
* * * [H]e should not lift more than 20 pounds. He should not perform repetitive bending, twisting or lifting with his lower back. He should have a job that allows him to sit and stand in different positions throughout the day. His job should not require prolonged standing of more than half an hour without a rest break. His job should not require walking of more than 10-15 minutes without a rest break.
 {¶ 33} As such, there was no medical evidence that claimant could actually perform light-duty work. Relator points to statements made by claimant at the hearing that if relator had work available within his restrictions that he would be happy to perform it as evidence that claimant can actually perform work activity. However, given claimant's history in this case, returning to work as quickly as possible following each and every surgery, the magistrate finds that claimant's statement is indicative of a man who not only enjoys working but is diligent, hard working, and not one to want to take advantage of the system. His statement does not necessarily indicate that he would be capable of performing any work it simply indicates a desire to be working. Those are two very different things.
 {¶ 34} Relator also contends that the commission abused its discretion by concluding that claimant would not be capable of making vocational adjustments. The record indicates that claimant performed skilled and semi-skilled work at strength levels well above light duty. Relator also points out that Mr. Sterba indicated that claimant may need refresher training or computer skills to qualify for suitable sedentary employment. However, nowhere in his vocational report does Mr. Sterba indicate that claimant is actually capable of being retrained. Furthermore, even if he would have found that claimant was capable of being retrained for other employment, the commission would not have abused its discretion by rejecting that conclusion. Again, as stated previously, the commission is the expert at examining and analyzing the nonmedical disability factors and there is nothing in the present case to demonstrate that the commission abused its discretion by determining that, given his age, education, lack of transferable skills, and work history, this particular claimant was not capable of making vocational adjustments necessary to return him to the workforce.
 {¶ 35} Relator also contends that the commission abused its discretion by not holding claimant's failure to seek rehabilitative help against him. In the present case, the commission did note that claimant had not sought any rehabilitation following his injury. However, the commission also cited claimant's efforts to return to work with this particular relator after his injury and after each and every surgical intervention he had for the allowed conditions in this claim as well as other problems for which he required surgery. The commission found that relator did not sit back and do nothing as some injured workers have done. In State ex rel. Bowling v.Natl. Can Corp. (1996), 77 Ohio St.3d 148, the court noted that the commission and courts can demand accountability of a claimant who, despite time and medical ability to do so, never tries to further their education or learn new skills. In Bowling, the claimant did nothing for 15 years between when he left the work force and filed for PTD compensation. In the present case, there is no reason to hold this claimant accountable for his failure to take advantage of opportunities for rehabilitation or retraining where he continued to work with the employer after numerous surgeries both related to and unrelated to the allowed conditions in this claim. This simply is not the type of situation where the commission and courts typically find that the claimant's inactivity warrants greater scrutiny.
 {¶ 36} Relator also contends that the commission abused its discretion by failing to address the issue of fraud. Specifically, relator points out that its surveillance video shows evidence of claimant's actual physical capabilities. As stated previously, the videotape shows claimant washing his car and pointing a rifle. The car washing itself took claimant approximately one and one-half hours and claimant took numerous breaks during that time. None of the activities described are outside the restrictions placed on claimant by Dr. Kuhlman. There is no evidence of remunerative activity or fraud.
 {¶ 37} In State ex rel. Lawson v. Mondie Forge,104 Ohio St.3d 39, 2004-Ohio-6086, the injured worker had been granted PTD compensation in 1994. Thereafter, in 2001, the Ohio Bureau of Workers' Compensation reopened the injured worker's case and documented his activities which included refuse disposal, cleaning up flags on village streets, plowing snow, purchasing hardware and gas, truck and plow maintenance, hauling gravel, loading unspecified items into a truck, and some lawn mowing. It was undisputed that the injured worker was paid by the Village of West Elkton, Ohio, a salary between $200 and $300 a year for his services on city council plus a bonus of $6 per hour for plowing. The commission found the injured worker had been engaged in physical activity since 1993 which demonstrated he was capable of performing sustained remunerative employment and revoked his PTD award and made a finding of fraud. Ultimately, in mandamus, the Supreme Court of Ohio disagreed with the commission's determination and ordered the commission to reinstate the claimant's PTD award.
 {¶ 38} Relative to physical activity performed while receiving PTD compensation, the Lawson court specifically noted as follows:
One of the most enduring (though not often explicitly stated) misconceptions about PTD is that once it is granted, the recipient must thereafter remain virtually housebound. This is a fallacy. PTD exempts no one from life's daily demands. Groceries must be purchased and meals cooked. Errands must be run and appointments kept. The yard must be tended and the dog walked. Where children are involved, there may be significant chauffeur time. For some, family and friends shoulder much of the burden. Others, on the other hand, lack such support, leaving the onus of these chores on the PTD claimant.
These simple activities can nevertheless often generate considerable controversy. That is because all of these tasks are potentially remunerative. From the school cafeteria to the four-star restaurant, people are paid to prepare meals. People are paid for lawn and child care. Many people earn their living behind the wheel. State ex rel. Parma Comm. Gen. Hosp. v.Jankowski, 95 Ohio St.3d 340, 2002-Ohio-2336 * * *, acknowledged this and cautioned against an automatic disqualification from compensation based on the performance of routine tasks, regardless of their potential for payment. We instead compared the activities with claimant's medical restrictions to determine whether they were so inconsistent as to impeach the medical evidence underlying the disability award.
* * *
This prohibition against viewing activities out of context applies even more forcefully here. Some of the randomly logged activities were beyond claimant's restrictions. The vast
majority of the cited activities, however, were not. Claimant's 1993 through 2001 activity spreadsheet has 207 confirmed activities, none of which contains sufficient information to conclusively establish that any of them conflicted with claimant's restrictions.
* * *
In State ex rel. Midmark Corp. v. Indus. Comm. (1997),78 Ohio St.3d 2 * * *, the employer challenged claimant's PTD application with surveillance evidence of claimant walking unassisted, raking leaves, and doing minor house repairs. The commission was not persuaded by Midmark's evidence and ordered PTD. The case eventually came before this court, which upheld the commission:
"First, the [surveillance] material does not establish a medical capacity for work greater than sedentary. It simply shows claimant walking unassisted or doing fairly unstrenuous domestic chores. * * *
"Second, these documented activities, even if deemed inconsistent and work-amenable, do not establish that claimant can do sustained remunerative employment. Midmark's investigation spanned approximately fifteen months, yet it could show only five days in which claimant was performing allegedly questionable activities. There is no evidence of claimant's performing even any medium-exertion labor, nor is there any evidence of claimant's doing the recorded activity on anything other than rare occasions. The surveillance package, therefore, proved very little." (Emphasis sic.). Id. at 11 * * *.
Id. at ¶ 20-21, 24, 30-32. (Emphasis sic.)
 {¶ 39} Based on the foregoing, it is the magistrate's decision that relator has failed to demonstrate that the commission abused its discretion by granting claimant's application for PTD compensation and relator's request for a writ of mandamus should be denied.